Our next case this morning is United States v. Joseph Wilcher. Mr. Mett, did I pronounce that correctly? It's Metti, Your Honor. Metti, all right. It's okay. You weren't the first. Good morning, Your Honors. Brian Metti for the appellant, Joseph Wilcher. Thank you for the opportunity to argue today. Your Honors, this case involves a narrow error committed by the district court that calls for narrow relief from this court. It stems from an often overlooked component of criminal sentencing, supervised release, which, as both the Supreme Court and this court have noted, is intended to serve rehabilitative, not retributive, ends. Consistent with that aim, Congress has directed sentencing courts to consider certain of the familiar 3553 factors. Protecting the public, deterrence, rehabilitation, these are all proper considerations when considering a term of supervised release. The seriousness of the offense is not. In addition to sentencing Mr. Wilcher to 10 years of imprisonment, which is the mandatory minimum in this case, the district court sentenced Mr. Wilcher to 10 years of burdensome supervised release, which represented double the mandatory minimum. In doing so, the district court relied on the seriousness of Mr. Wilcher's offenses, and I think this is important. It only relied on the seriousness of his offenses. But if we do what we ask, what you've asked of the court, and that's to issue a limited remand, looking at the sentencing package, are we convinced that the district court would not change any other aspects of the sentencing? And what part of the record would convince us of that? Your Honor, the basis for our contention in our brief, in terms of asking for a narrow remand, which as we noted in our brief, generally the rule is this court remands for a full resentencing. A couple of factors in this case. One, Mr. Wilcher received the mandatory minimum. The guidelines range after the application of the mandatory minimum was 120 to 121 months. The district court gave Mr. Wilcher 120 months. So there's no indication based upon the fact that it gave him the mandatory minimum that it would deviate from that sentence. And the delta between what the bottom line of the guidelines range was and what the top line was, it was so small that our position is that it is unlikely that the district court would change from that 120-month sentence. And quite frankly, a narrow remand is important here because, again, we're not challenging the term of imprisonment. The purpose of this appeal was to focus on the narrow issue of supervised release. And our position is that focusing on that narrow issue calls for a narrow remand. And actually, most of the sentencing advocacy on both sides at the sentencing hearing had to do with the supervised release term. Correct. And I think that's just, Your Honor, as a matter of practice, I think it was because of the fact that the district court had to give Mr. Wilcher 120 months. And so really the fighting issue in this case was the supervised release. Right. On the statutory question, I'm struggling to get a foothold in the distinction between improper consideration of the seriousness of the offense, which is the one component of 3553A that is excluded from supervised release assessments, both original imposition and revocation under 3583, and the proper consideration of the nature of the offense. I don't know how much daylight there is there to make a meaningful legal difference because your sort of first-tier argument here is that there was procedural error because the judge only mentioned the seriousness of the offense in conclusory terms and that's all there is and that's an improper factor. But consideration of the nature of the offense is permissible. Agreed, Your Honor. So what's the difference? Sure. Agreed. I think two points. As this court and then as we said in our brief, the Second Circuit and Burden have noted, there is certainly an overlap between the seriousness of the offense and the nature and circumstances of the offense. We're not arguing that. Our position is that we've got to take the district court at its word with the transcript that it's given us, and it never mentioned the nature and circumstances of the offense. It only mentioned, quote, the seriousness of the offense, which was the exact phrase drawn from 3553A28. And as this court noted in Shaw, the purpose of requiring the district court to provide an explicit rationale is that it allows this court to engage in meaningful appellate review so that this court isn't forced to infer from context whether the discussion of the seriousness of the offense related to A2A or whether it related to the permissible consideration of the nature and circumstances of the offense. And so I think we've got to take the district court at its word and take the rationale that it gave this court. Well, the district judge actually said nothing beyond encanting the word seriousness of the offense except for a drive-by mention to the defendant driving a considerable distance to have this meet up with an underage, what he thought was an underage girl, really an FBI agent online. That's it. That's the entire rationale for the whole sentence. But as I said, the litigation was actually over the term of the supervised release and the conditions of supervised release, but the judge said almost nothing beyond this incantation of the seriousness of the offense. So is this just an insufficiently explained sentence, setting aside the potential for a procedural error? Well, I think it's both. I think it's an insufficiently explained sentence. Our position is the district court gave these generic statements of I consider the arguments of counsel, I consider the 3553 factors. It said that and then it talked about the seriousness of the offense. Our position is when you take out that improper consideration, so that improper rationale, now all we're left with is this insufficiently explained sentence. And so it's sort of an error in both ways, Your Honor. And just to the point I wanted to make with regards to those generic statements, this court's case law makes clear that the district courts can't just say I consider the party's arguments, I looked at the factors. It's got to do more. It's got to provide a record for this court to engage in meaningful appellate review, and it just simply didn't do so here. Probably because this was a mandatory minimum sentence, end of story. Yes, Your Honor. And I wasn't trial counsel in this case, but as a practical matter, again, I think it was basically a foregone conclusion he was going to get a 121th sentence. As I mentioned in my opening, supervised release is generally a secondary consideration in most sentencing. The ballgame usually is how much prison time someone's going to get. That's what most people care about. Perhaps what everybody cares about that's facing a criminal sentence. And so, again, it wasn't just, I think it's something the district court overlooked, and in doing so, it committed error. The government wanted lifetime supervised release. It did. Justified by reference to just the fact that this was a child enticement case? Or was there some other justification? That's not what I'm saying. I mean, in terms of looking at the transcript, it basically, it argued for the lifetime supervised release basically, I think, based upon the nature of the offense, but that was about it. That's at least all I took away from the transcript. And then just one final point with regards to the arguments of counsel, and this sort of relates back to your question about the nature and circumstances. Even if you were to consider, for example, the driving at considerable distances relating to the nature and circumstances of the offense, the district court also committed an error because it didn't engage with Mr. Wilcher's trial counsel's arguments in favor of the five-year term. Mr. Wilcher had argued that his scant criminal history, I believe the only thing in the record from my read of the PSR is that he had been convicted of a minor marijuana charge about 16 years ago. There was no history of crimes in terms of what he was convicted of here. The mitigation arguments, also his performance while on pretrial release? I believe he was, in terms of his conduct in terms of pretrial release, I believe he was on home arrest during the time. I don't know how much of that effect that had played in terms of counsel's argument. I think counsel was making more of that argument in the sense of, well, let me back up. I just don't think it related to the term of supervised release. You were on the train or talking through other mitigation arguments that the district court failed to consider, and I was assisting. Yes, thank you. The other argument that the trial counsel had made was that five years was sufficient in order to allow the district court to be assured that Mr. Wilcher didn't pose a risk. I see I have a little time left, so I'll save it for rebuttal. Thank you. Mr. Simpson, good morning. Good morning, Your Honors. May it please the Court. I'm Scott Simpson with the Department of Justice on behalf of the United States. The overarching fact here, of course, as you have mentioned, Chief Judge Sykes, is that the court here, the district court, was imposing the mandatory minimum term of imprisonment. We recognize that the district court's explanation of the sentence here was pretty short, but that should not be surprising where the court was imposing a mandatory minimum term of imprisonment. Another circumstance I think we need to keep in mind here is that this was, the judge heard a three-day trial. This case went to trial, and so the district court judge was extremely familiar with the facts of the case. The statute required, of course, a five-year term of supervised release. The sentencing commission's policy statement recommended a lifetime term of supervised release. The government, as the court has already mentioned, requested a lifetime term of supervised release. And defense counsel's argument, defense counsel did recommend a five-year term of supervised release, the minimum, but defense counsel's argument really focused on the lack of a need, as he saw it, for a lifetime term of supervised release. In fact, in light of Mr. Wiltshire's age at sentencing, he was 40 at the time, a lifetime term would have been quite a significant term of supervised release. Ten years in prison, or perhaps a little less, with good behavior from the BOP, he could have been on supervised release for at least a couple of decades if he had received a lifetime term. So that was really the focus, of course, of defense counsel's argument. Then the court, in imposing the term of supervised release, went along with that argument on the part of defense counsel by declining to impose that lifetime term of supervised release. Now, on this issue of beyond the adequacy of the explanation, this issue that defense makes, this argument they make, that the district court relied on an improper factor. Section, the court has already referred to this, I believe, again, Chief Judge Sykes, Section 3583 says that the court should consider the nature and circumstances of the offense. And this court has said in the Clay decision, we cite that in our brief, this court has observed that the nature of the offense obviously includes the seriousness of the offense. And although the court mentioned the seriousness of the offense, it didn't say anything about retribution, about just punishment, which is the other aspect of that part of 3553A. Now, on the scope of the remand, if there were to be any remand here, Your Honors, we strongly believe that any remand should permit full resentencing. It's indisputable. I believe it was Judge Pryor who mentioned this, used this term package. It's indisputable that district court judges consider the term of imprisonment and the term of supervised release as a package. Here, again, the court imposed a mandatory minimum term of imprisonment, whereas the statutory term of imprisonment, the maximum was life in prison. So the court was obviously way, way below that maximum. But there's no indication that the judge keyed the term of supervised release to the term of imprisonment here. That is correct, Your Honor. Basically, all we have is the fact that we know district judges consider that to be a  And the fact that the judge . . . Well, when there's a little more give in the guidelines range for the imprisonment component, here there's one month's difference. Correct, but the court could have considered a variance from the guidelines. The court could have gone above those 120 months. But there's no indication that the judge thought this offender to be a more serious or culpable offender in this category of offenses . . . Well, Your Honor . . . . . . so as to justify a variance. There's no record. And there was success on pretrial home confinement. No other markers that would raise a concern about recidivism, per se, other than the nature of the crime. Well, I think here we have a little bit more beyond the nature, the obvious nature of the crime, attempted enticement of a minor. The court did refer to the fact that Mr. Wiltshire drove an hour and a half to meet with this person who he thought was a minor for purposes of sex. And so that obviously gave him plenty of time to change his mind and turn around. So it's . . . Is that out of the ordinary for these kinds of offenses? Your Honor, I'd have to do a survey. Not usually when there's an online hookup. I'd have to do a survey of the cases. Offenders are willing to drive long distances. I have seen that myself in other cases. I'm sure it happens. I'm sure there are enticement cases where it does not happen. And here you have a couple of other circumstances as well, factual circumstances. When Mr. Wiltshire learned that his target was age 15, he didn't, in the electronic messages and in the phone call that he had with his confidential source, he didn't express concerns about having sex with a minor. He expressed concerns about getting caught. And I think that also . . . And again, the district judge heard all of this in the trial. And he admitted once the confidential source told him on the phone . . . No, I'm sorry, it was in the electronic message, told him, look, I'm sorry, I'm 15. He admitted that he had suspected, he admitted partly on the phone, that he had suspected she might be a minor even before that time. So, one of the main reasons that we encourage the court, if there's to be a remand, to make it a remand for full resentencing is that obviously one of the . . . and here particularly in this kind of crime, one of the important purposes of sentencing, both imprisonment and supervised release, is to protect the public. And if the district court in this case were to be required to rethink its reasons for the term of supervised release, the court may well want to rethink the term of imprisonment as well, since they both, again, have that purpose of protecting the public. Again, very important in this kind of crime. So, Your Honors, we think it would be wrong for that reason, again, if there were to be a remand in this case. We think it would be wrong to tie the district court's hands and require him only to look at his reasons for imposing the 10-year term of supervised release. So, unless there are any further questions, Your Honors, we urge the court to affirm, or if there were to be a remand, to make it a remand for full resentencing. Thank you. Thank you very much. Mr. Meddy, you have a little bit of time left. I'll be brief, Your Honor. Just two quick points. Opposing counsel talked about driving considerable distance talking to a 15-year-old. Those may well be the case. The district court never said that. It never provided that as a rationale. We've got to take the district court at its word with the transcript that it's given us, with the record that it's given this court. And then second, with regards to the narrow remand that we're seeking, I think the government's brief raises a potentially serious issue of, if this court were to remand, open it up for a full resentencing, and the district court gives him more time for imprisonment, it would essentially be punishing Mr. Wiltshire for succeeding on appeal. And I think that raises a whole host of issues in terms of Mr. Wiltshire's due process that this court can simply avoid by issuing a narrow remand. I'm out of time. Thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.